Pohl's Estate.

Argued April 20, 1939. Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*John Joseph O'Connell,* with him *John F. Murphy,* for appellants.

*John A. Metz,* with him *Bernard Goodman* and *John A. Metz, Jr.,* for appellee.

OPINION BY STADTFELD, J., June 28, 1939.

This is an appeal from a decree of distribution in

the Orphans' Court of Allegheny County in the estate of Emilie Pohl, deceased.

Emilie Pohl died testate on May 28, 1937, aged about 83 years. By her will, executed August 5, 1936, after small bequests to grandchildren and two of her children, she gave the residue of her estate to a daughter and two sons. The personal estate consisted of fifty shares of stock in the Westinghouse Electric & Manufacturing Company, forty shares of stock of the Timken Roller Bearing Company, and thirty-seven shares of stock of the Radio Corporation of America, all of which was appraised at $9,818.37. This stock was all converted by the executors, and the balance for distribution is $8,129.60.

At the audit, a claim was presented by Edward G. Pohl, a son of the decedent, based on a writing signed by her, dated March 29, 1928, acknowledging receipt of certain designated stocks from her son. Said writing was in form following: "Akron O. 3/29/28. Received of Edward G. Pohl, twenty (20) shares Timken Roller Bearing Co. Stock certificate No. NYO-25983 and fifty shares Westinghouse Electric Company certificate No. PO21823 for twenty (20) shares certificate NYO196997 for twenty four (24) shares certificate No. PO42820—for four (4) shares certificate No. PO51854 for one (1) share certificate No. PO57713 for one (1) share, all purchased by E. G. Pohl as investment he to participate in one half of profits when stock is sold. (signed) Emilie Pohl."

The important feature in this receipt is the concluding clause reading, "all purchased by E. G. Pohl as investment he to participate in one-half of profits when stock is sold."

Some time thereafter, the stock again came into the possession of Edward G. Pohl. The record does not disclose when or for what purpose.

In September of 1936, Emilie Pohl was approximately 82 years of age. She was infirm and so weak-minded that it was deemed advisable to have a guardian

appointed for her estate. At that time, Edward G. Pohl, who resides in Chicago, brought the certificates to Pittsburgh and turned them over to John J. O'Connell, one of counsel for the appellants, for the sole purpose of having them delivered to the Union Trust Company for safe-keeping until such time as a guardian would be appointed for Emilie Pohl, and then to be turned over to the guardian. Immediately after this was done, Mr. O'Connell wrote Mr. Pohl and notified him that unless he made some claim to the stocks within fifteen days they would be turned over to Mrs. Pohl who was admittedly weak-minded, and that a guardian would not be appointed for her. Mr. Pohl replied immediately and notified Mr. O'Connell that he had a financial interest in the securities; that they had been delivered to Mr. O'Connell for the express purpose of being turned over to the guardian to be appointed and that unless a gardian was appointed they should be returned to him. A guardian was then appointed for Mrs. Pohl and the stocks turned over to the guardian who continued to hold them until after the death of Mrs. Pohl when they were delivered to the executors of her estate.

The executors of the decedent's estate sold all the stocks but did not account to Mr. Pohl for his share of the profits. The matter then came before the auditing judge at the audit of the executors' account.

The auditing judge (TRIMBLE, J.) awarded Edward G. Pohl, the appellee here, $3,764.91, representing one-half of the profits which were realized when the stock was sold. To this award and decree, exceptions were filed by the appellants, which exceptions were dismissed by the court in banc and an opinion was filed by CHAL-FANT, J. From the decree of the court in banc dismissing the exceptions and affirming the decree of the auditing judge, this appeal was taken.

Appellants' contention was, in the court below and is here, that the claim should not have been allowed: first, because there was no consideration for the promise; and

second, because the claimant failed to prove the purchase price of the stock.

Quoting from the opinion of the court below: "Whether the money for the investment was furnished by claimant or decedent does not appear. By the admission of decedent claimant made the actual purchase of the stock, and the services rendered by him were sufficient consideration in her mind to warrant a division of the profits. It was not incumbent upon him to prove anything more."

It is well settled that past services rendered may give rise to a moral obligation which is a sufficient consideration to support a promise to pay therefor: *Sutch's Estate*, 201 Pa. 305, 50 A. 943.

In that case, services were rendered by adult children to their father under circumstances creating no legal obligation on the father's part to compensate the children therefor. Subsequent to the rendering of the services, the children stated to their father that they thought that he ought to compensate them. Although he was not legally obligated so to do, the father thereupon gave to the children certain promissory notes totalling $4,000. Upon the death of the father claims were presented on these notes and were allowed. It was claimed by those opposing the claim—as here— that there was no consideration for the notes. The Supreme Court rejected this contention, holding at p. 314 as follows: "It is argued the notes were without consideration; this is a mistake; the children had no claim which they could have enforced at law; both they and their father fully understood this; had it been otherwise, neither they nor their father would have been in the office of the father's attorney that morning to put their claim in such shape that it could be enforced; but they asserted and he admitted a moral obligation on his part to compensate them for long and faithful service. . . . . . He was not legally bound to pay them anything, but if he chose to consider that he in conscience owed them, the moral debt was a good consideration for the

legal promise expressed in the notes." And further on
p. 316: "The circumstances pointed to are, that James
Sutch was not legally bound to compensate his children.
As we have already noted, that was a question for
himself; if he felt that he ought to in fairness and
justice compensate them, that was no concern of his
wife's; he could turn the moral obligation into a legal
one by giving the notes." See also *Zumbro v. Zumbro,*
69 Pa. Superior Ct. 600.

It is clear, therefore, that (whether the money for
the investment was furnished by the son or the mother)
the past services rendered by Edward G. Pohl to the
decedent in and about the purchasing of the stocks for
an investment, and expressly recognized and referred
to by the decedent herself in the instrument upon which
the claim is based, gave rise to a moral obligation which
was sufficient to support the decedent's promise to pay
her son, Edward G. Pohl, one-half of the profits when
the stock was sold.

There remains for consideration only the question of
the sufficiency of the evidence to sustain the decree. The
certificates of stock in the Westinghouse Company bear
dates from August 22, 1921 to January 1, 1925; those
of the Timken Roller Bearing Company from August
6, 1925 to January 10, 1929; and those of the Radio Cor-
poration from February 20, 1933 to February 18, 1935.
It is admitted that the Radio Corporation stock was
received as a dividend on the Westinghouse stock, so
there was no purchase price for that; twenty shares of
the Timken Roller Bearing Company were received as
the result of a split-up of stock, and four shares of the
Westinghouse Company were received as a stock divi-
dend.    The market value of the various stocks was
shown as of the dates of the certificates.   As stated by
the court below in the opinion overruling exceptions:
"Because of the length of time which had elapsed since
it was purchased, it was difficult, and possibly imprac-
ticable, to prove the actual cost on the date of purchase."
We, therefore, believe that claimant made out a prima

facie case, and, in the absence of any evidence that the market price on the day the certificate was issued was lower than that on the date of purchase, the finding and decree of the auditing judge, affirmed by the court in banc, was without error.

The record shows that it is admitted that these stocks were purchased through Kay-Richards & Company and Sproul & Company, brokerage houses; that Sproul & Company had gone out of business and that Kay-Richards & Company had not been able, but were still endeavoring, to find a record of the purchase order of the Timken Roller Bearing Company stock (which was purchased fourteen years before). Since admittedly both sides knew that the stock had been purchased through Sproul & Company and Kay-Richards & Company, they had equal opportunity to ascertain that Sproul & Company had gone out of business and had no available records and that Kay-Richards & Company were unable to locate their old records of the transaction.

Appellant's brief is in some respects misleading, if not unfair. In subdivision I of his brief the following statement is made: "It (Exhibit A) shows the receipt by the decedent from her son of certain specified stocks which were issued some seven years before the execution of the receipt (although the said stocks were not delivered to the decedent until eight years after the date of the receipt *and then only after an action brought for fraudulent conversion.)*" (Italics supplied). This statement would necessarily imply that an action for fraudulent conversion had been brought against claimant appellee. An examination of the record indicates conclusively that no action for fraudulent conversion had been brought against claimant. While an allegation of fraud was attempted to be injected into the case, there was not a scintilla of evidence to support it.

Under subdivision III of the brief it is stated: "...... the evidence as to value as to date of issue was stricken from the record." At the hearing of the case, because

of the absence of a witness, in order to avoid delay, claimant offered evidence of the market value of the stocks on certain dates before establishing the various dates on which the stock had been issued. Objection was made by counsel for appellant that the date of issue was not necessarily the date of purchase. Thereupon, the court remarked, "If this is not the proper date the stock was purchased you can make a motion to strike the testimony all out." The dates of issue were subsequently agreed upon and put in the record. No motion to strike out was subsequently made, and the auditing judge accepted the values as of date of issue as the only evidence obtainable.

We agree with the conclusion reached by the court below.

The assignments of error are overruled and judgment affirmed at costs of appellant.